### James Jackson ex dem' Christopher and John Vought *against* Barnabas Wood.

*Braine's pat-*
*ent is bounded*
*by the line of*
*the manor of*
*Rensellaer.*

THE only question in this cause was respecting the location of *Braine's* patent, granted in the year 1752. If it extended to the line of the manor of *Rensellaer*, the plaintiff would be entitled to recover, if there should be a gore between *Braine's* patent and and the manor line, then the premises would be covered by that under which the defendant claimed.

*Per curiam* delivered by THOMPSON J. I think *Braine's* patents is bounded on the manor line. This grant is not designated with reference to any adjoining patent. The only expressions which give it locality, are those which describe it, as part of *Butler's* Indian purchase in 1733, that it had been formerly surveyed by *Edward Collins* for *Richard Riggs*, and that it began at the south west corner of a tract of land near the township of *Schenectady*, formerly surveyed for *James Delancey* and others. It appears that *Collins'* survey is lost, and all that we know of the locality of *Rigg's* tract is, that it contained 2,000 acres lying in *Albany* county, near or upon the *Norman's* kill, and within *Butler's* purchase. It also appears that the survey for *Delancey* and others, referred to in *Braine's* patent, is lost, and we are therefore obliged to resort back to the cotemporary acts of the parties, to determine at this day the true location of *Braine's* patent. For

NEW-YORK,
May, 1805.

Jackson ex dem'
C. & J. Vought
v.
Wood.

when a grant does not contain within itself the requisite evidence of its location, the next best evidence of the intention of the parties is those concurrent acts *in pais*, by which the bonds were reduced to certainty, and possession given. We have the testimony of two witnesses, who were present and took a part in the survey of the patent, which was made by the surveyor general, the year before the patent bears date, under a warrant issued at the instance of *Braine.* These witnesses refer back to a survey corresponding, in point of time with the one ordered, and they state that *Braine,* and the surveyor general were present. From the testimony of one of these witnesses, who was a chain bearer, it appears, that the patent was located on the manor line, as to the southern boundary. The beginning in the grant, is described to be at the southern corner of the tract surveyed to *James Delancey* and others, which tract, from the evidence in the case, appears to have been on the manor line. The petition of Mr. *Duane* in the year 1674 (from whom it was allowed on the argument that the defendant derives his title) admits the manor line as to the western boundary of *Braine's* patent. This shews his understanding at that time respecting the location. The grant to him, the following year, erecting his township, recognises also the same location, and may be deemed in some measure expressive of the sense of government on the subject. It is of considerable importance in locating *Braine's* patent, to ascertain the southwest corner of the *Schenectady* patent, and true southern boundary of that of *Corysbush.* The *Schenectady* patent purports to extend 462 chains south of the *Mohawk* river ; *Corysbush* runs on the line of this patent to the southwest corner thereof, and then extends on the same course 198 chains further, at which place begins *Braine's* patent. The place recognised and possessed as the southwest corner of the *Schenectady* patent is more than 462 chains south of the *Mohawk* river. It appears however by the testimony of *Cockburn,* that at the termination of the 462 chains, there is no marked tree or monument, but that the tree marked and recognised as the southwest corner, is further south. He also says, that at the termination of the 160 chains, which is the length given of the *Corysbush* line, there appear to be no marked trees, but that about a quarter of a mile further south, there is a line of marked trees, across the south end of *Corysbush* patent. If the south west corner of the *Schenectady* patent be correctly located at the place

now recognised as such, and not controlled by the length of chains given in the grant, and the line of marked trees across the south end of *Corysbush* patent, as mentioned by the witnesses, be the true line (both of which, from the testimony in the case, I am inclined to think ought to be considered as settled according to the present location) then giving to *Braine's* patent its length of chains, it will extend down to the manor line, and no gore be left. But if the testimony of *Peak*, the chain bearer is to be credited, it will I think, remove every doubt with respect to the location of *Braine's* patent. The survey referred to by him must have been made before the issuing of the patent, and the one on which the grant was founded. The time spoken of is about the date of the patent, and the internal evidence arising from the recitals in the grant, speaks a language not to be contradicted. The petition of *Braine*, the warrant of survey, and the return to that survey are all recited. These were acts of government, and must be considered as satisfactory evidence, that the grant was made upon actual survey. *Peak* says, the survey he attended began at a beach tree on the manor line. If this be the survey upon which the patent issued, which I think must have been the case, the conclusion is irresistible that *Braine's* patent is bounded on the manor line. From this brief review of the material parts of the case, I am satisfied that *Braine's* patent was located in the year 1751, under the authority of government, and with the consent of the grantee upon the very lines now set up by the plaintiff; and that this location received the subseqent acquiescence of government, and was generally known and agreed to until about the year 1766. Under these circumstances I am of opinion, and so are the court, that the location was binding upon the parties to it, and consequently that the plaintiff is entitled to judgment.

LIVINGSTON, J. Gave no opinion, having been concerned.